```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

CHRISTOPHER DEARDORFF,         )
                               )
          Petitioner,          )
                               )    CAUSE NO. 2:17-cv-132-RL-PRC
     v.                        )
                               )
SUPERINTENDENT,                )
                               )
          Respondent.          )

## OPINION AND ORDER

This matter is before the Court on the Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus, filed by Christopher Deardorff, a *pro se* prisoner. For the reasons set forth below, the petition (ECF 1) is **DENIED**. The clerk is **DIRECTED** to **CLOSE** this case.

BACKGROUND

In the petition, Deardorff challenges the prison disciplinary hearing (MCF 16-09-494) where he was found guilty of conspiracy to traffic in violation of Indiana Department of Correction (IDOC) policy A-111/A-113 by the Disciplinary Hearing Officer (DHO). ECF 1 at 1. Deardorff was sanctioned with the loss of 90 days earned credit time and was demoted from Credit Class 1 to Credit Class 2.

The Conduct Report charges:

> On August 22, 2016 at approximately 11:10am the Investigation Department confiscated a package coming into the facility for Offender Christopher Deardorff, 985307. The package was a Priority Mail 2-Day package containing one paperback book titled; The Charm School. This department has reason to believe the book contained Suboxone. Phone calls acknowledged that Deardorff worked

>       with a female suspect, and another offender to traffic
>       drugs. Upon further inspection hidden inside the book was
>       twelve suboxone strips. Investigation shows Deardorff and
>       Offender Jeffrey Pellegrino, 966538 did conspire with a
>       female, Ms. Michelle Wooten in the amount of $500 which
>       Deardorff's family sent to Wooten for purchasing,
>       packaging and sending this package to Deardorff. Details
>       of this case can be reviewed by DHB in the DII office;
>       jpays, calls related documents. Ms. Wooten during an
>       interview acknowledged that she did package and send
>       Suboxone in at the request of Deardorff. See attached
>       Investigation Report for details on Case 16-MCF-0101. MCF
>       is currently working with outside Law Enforcement
>       Agencies on warrants for all parties involved.

ECF 7-1.

<u>DISCUSSION</u>

When prisoners lose earned time credits in a prison disciplinary hearing, they are entitled to certain protections under the Due Process Clause: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in their defense, when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Deardorff claims that he is entitled to habeas corpus relief because IDOC failed to follow its own policies in imposing his discipline. However, the IDOC's failure to follow its own policy

2

does not rise to the level of a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas relief"); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). Thus, Deardorff's first argument does not identify a basis for habeas corpus relief.

Next, Deardorff claims that he is entitled to habeas corpus relief because he was denied access to evidence. Specifically, he requested evidence: (1) that he called Ms. Wooten on the phone; (2) a review of the interview with Ms. Wooten; and (3) any statement submitted by Ms. Wooten. Inmates have a right to present relevant, exculpatory evidence in their defense. *Miller v. Duckworth*, 963 F.2d 1002, 1005 (7th Cir. 1992). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). However, prison officials are provided great deference in their decisions to limit this right based on the administrative or security needs of the facility. An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566–67.

In this case, Deardorff's requests were properly denied. First, Deardorff's request for evidence that he spoke with Ms. Wooten on the phone was properly considered and denied. Prior to the hearing, Deardorff received a response to his requests for evidence. This response explained that the Screening Officer spoke with an investigator, reviewed the materials relevant to the disciplinary case, and confirmed that Deardorff did not make any phone calls to Ms. Wooten. The DHO could not review or produce evidence that did not exist.

Next, the DHO properly denied Deardorff's request to review the interview and other statements by Ms. Wooten. The interview was confidential and was part of an on-going criminal investigation. At the time of his discipline, warrants were in the process of being issued against the involved parties. Respondent submitted a declaration of Lorna Harbuagh, the investigating officer assigned to this disciplinary case. ECF 7-10 at 1. Investigator Harbuagh explained that Deardorff could not have been shown the interview of Ms. Wooten because "the interview was conducted by outside law enforcement during an ongoing criminal investigation. Additionally, the interview would have been kept confidential from offender Deardorff because he, Ms. Wooten, and offender Pellegrino, were all suspects in the ongoing criminal investigation." *Id.* at 2. Thus, IDOC had a reasonable security concern related to the disclosure of any statement by a suspect in the criminal investigation, and the

4

denial of Deardorff's requests did not violate his due process rights and do not entitle him to habeas corpus relief.

Finally, Deardorff argues that the DHO did not have sufficient evidence to find him guilty. In evaluating whether there is adequate evidence to support the findings of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. A conduct report alone can provide evidence sufficient to support the finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *Hill*, 472 U.S. at 457 (quotations marks and citation omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

5

Here, Deardorff was found guilty of violating IDOC A-111/A-113 by conspiring to traffic contraband into the prison. The IDOC defines offense A-111 as, "[a]ttempting or conspiring or aiding and abetting with another to commit any Class A offense." Adult Disciplinary Process, Appendix I. [http://www.in.gov/idoc/files/02-04-101 APPENDIX I-OFFENSES 6-1-2015(1).pdf](http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf). IDOC A-113 prohibits inmates from "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." *Id.* Indiana law defines the offense of trafficking as:

> (b) A person who, without the prior authorization of the person in charge of a penal facility or juvenile facility, knowingly or intentionally:
>
>> (1) delivers, or carries into the penal facility or juvenile facility with intent to deliver, an article to an inmate or child of the facility;
>> (2) carries, or receives with intent to carry out of the penal facility or juvenile facility, an article from an inmate or child of the facility; or
>> (3) delivers, or carries to a worksite with the intent to deliver, alcoholic beverages to an inmate or child of a jail work crew or community work crew.

Ind. Code § 35-44.1-3-5 (West).

The DHO had sufficient evidence to find Deardorff guilty. A review of the confidential intelligence file establishes that there was far more than "some evidence" connecting Deardorff to the trafficking scheme. Mr. Deardorff claims that there is no evidence that he asked for the package. However, evidence contained in the confidential investigation file directly refutes this claim. The

DHO's decision was not unreasonable or arbitrary in light of the comprehensive evidence connecting Deardoff to the trafficking scheme.

CONCLUSION

For the reasons set forth above, the petition (ECF 1) is **DENIED**. The clerk is **DIRECTED** to **CLOSE** this case.

**DATED: September 25, 2017**         /s/ RUDY LOZANO, Judge
                                      **United States District Court**